**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ZESTY PAWS LLC,

                Plaintiff/Counterclaim Defendant,

      v.

NUTRAMAX LABORATORIES, INC. and
NUTRAMAX LABORATORIES VETERINARY
SCIENCES, INC.,

                Defendants/Counterclaim Plaintiffs.

Case No. 1:23-cv-10849-LGS

**ZESTY PAWS LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO EXCLUDE THE**
**REPORT AND OPINIONS OF PROFESSOR NATHAN NOVEMSKY, Ph.D.**

GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200

*Attorneys for Plaintiff/Counterclaim Defendant*
*Zesty Paws LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

OVERVIEW OF PROFESSOR NOVEMSKY'S PROFFERED OPINIONS .............................. 3

ARGUMENT ........................................................................................................................ 5

      I.      PROFESSOR NOVEMSKY'S OPINIONS ARE UNRELIABLE AND
             NOT BASED ON ANY DISCERNIBLE METHODOLOGY ............................. 7

      II.     PROFESSOR NOVEMSKY'S OPINIONS REGARDING THE
             EUROMONITOR FOOTNOTE ARE INADMISSIBLE BECAUSE
             THEY ARE IRRELEVANT, SPECULATIVE, AND USURP THE ROLE
             OF THE FACTFINDER ....................................................................... 11

             A.     Professor Novemsky's Euromonitor Footnote Opinion is Irrelevant
                    to Whether Zesty Paws' #1 Claims Are False or Misleading ................... 11

             B.     Professor Novemsky's Euromonitor Footnote Opinion Usurps the
                    Role of the Factfinder ................................................................. 11

      III.    PROFESSOR NOVEMSKY'S OPINIONS CONCERNING ZESTY
             PAWS' OR CONSUMERS' STATE OF MIND, MOTIVATION, OR
             INTENT ARE INADMISSIBLE AS IMPROPER AND UNRELIABLE ........... 12

CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*523 IP LLC v. CureMD.Com*,
48 F. Supp. 3d 600 (S.D.N.Y. 2014)...........................................................................................6

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
185 F. Supp. 3d 401 (S.D.N.Y. 2016).........................................................................................6

*AU New Haven, LLC v. YKK Corp.*,
2019 WL 1254763 (S.D.N.Y. Mar. 19, 2019), *objections overruled*, 2019 WL
2992016 (S.D.N.Y. July 8, 2019) ..............................................................................................14

*Coca-Cola Co. v. Tropicana Prods., Inc.*,
690 F.2d 312, 317 (2d Cir. 1982)...............................................................................................7

*Collado v. City of N.Y.*,
2017 WL 4533772 (S.D.N.Y. Sept. 27, 2017)............................................................................7

*Cross Com. Media, Inc. v. Collective, Inc.*,
2014 WL 11343849 (S.D.N.Y. Aug. 21, 2014)...........................................................................8

*Daubert v. Merrell Dow Pharm, Inc.*,
509 U.S. 579 (1993)...............................................................................................................2, 11

*First Health Grp. Corp. v. United Payors & United Providers, Inc.*,
95 F. Supp. 2d 845 (N.D. Ill. 2009) ....................................................................................10, 13

*Highland Capital Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005)..................................................................................12, 13

*Hygh v. Jacobs*,
961 F.2d 359 (2d Cir. 1992)......................................................................................................12

*Estate of Jaquez v. City of N.Y.*,
104 F. Supp. 3d 414 (S.D.N.Y. 2015)........................................................................................6

*Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*,
960 F.2d 294, 299 (2d Cir. 1992)...............................................................................................7

*Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*,
348 F. Supp. 2d 165 (S.D.N.Y. 2004).........................................................................................7

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*,
14 F. Supp. 2d 391 (S.D.N.Y. 1998)....................................................................................12, 13

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).................................................................................................................3, 5

*LaSalle Bank Nat. Ass'n v. CIBC Inc.*,
2012 WL 466785 (S.D.N.Y. Feb. 14, 2012).............................................................................13

*Lippe v. Bairnco Corp.*,
    288 B.R. 678 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004)....................................6

*Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
    2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015)...........................................................................11

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
    209 F. Supp. 3d 612 (S.D.N.Y. 2016), *aff'd sub nom. LVL XIII Brands, Inc. v.*
    *Louis Vuitton Malletier SA*, 720 F. App'x 24 (2d Cir. 2017) ......................................8

*Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007).....................................................................................6

*Maloney v. Singas*,
    351 F. Supp. 3d 222 (E.D.N.Y. 2018) ....................................................................................8

*Mason v. AmTrust Fin. Servs., Inc.*,
    2020 WL 7425254 (S.D.N.Y. Dec. 18, 2020) ........................................................................9

*Nimely v. City of N.Y.*,
    414 F.3d 381 (2d Cir. 2005)..........................................................................................5, 8, 11

*Pearlman v. Cablevision Sys. Corp.*,
    2015 WL 8481879 (E.D.N.Y. Dec. 8, 2015) ........................................................................11

*Piepes v. NAI Entm't Holdings LLC*,
    394 F. Supp. 3d 315 (E.D.N.Y. 2019) ..................................................................................10

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)................................................................................6, 12

*Scentsational Techs., LLC v. Pepsi, Inc.*,
    2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018).......................................................................10

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144, 153 (2d Cir. 2007) ...........................................................................................1

*U.S. v. Paracha*,
    2006 WL 12768 (S.D.N.Y. Jan. 3, 2006), *aff'd*, 313 F. App'x 347 (2d Cir.
    June 19, 2008).........................................................................................................................6

*U.S. v. Williams*,
    506 F.3d 151 (2d Cir. 2007)....................................................................................................6

*Upjohn Co. v. Am. Home Prods.*,
    598 F. Supp. 550 (S.D.N.Y. 1984)..........................................................................................8

**Other Authorities**

Fed. R. Evid. 702 ............................................................................................................... *passim*

Pursuant to Fed. R. Evid. 702, Plaintiff/Counterclaim Defendant Zesty Paws LLC ("Zesty Paws") respectfully submits this memorandum of law in support of its Motion to Exclude the Report and Opinions of Nathan Novemsky, Ph.D., designated as an expert by Defendant/Counterclaim Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively, "Nutramax Labs"), and submitted in support of Nutramax Labs' Motion for a Preliminary Injunction ("PI Motion").

## **INTRODUCTION**

The sole basis for Nutramax Labs' PI Motion is the proffered evidence of Dr. Nathan Novemsky ("Professor Novemsky"), an expert in the "psychology of judgment and decision-making, an area that overlaps with behavioral economics and consumer behavior." (Declaration of Richard A Edlin, dated January 9, 2023 ("Edlin Decl."), Ex. 1 ¶ 1.) Because Professor Novemsky offers only abstract psychological perceptions gleaned from academic articles and no actual consumer data, method or process for his opinions on whether Nutramax Labs is a "brand," and merely speculates as to the "ineffectiveness" of the alleged "disclaimer" and the impact of the #1 Claims on pet supplement consumers, Professor Novemsky's expertise and opinions are both immaterial and methodologically unsound.

To meet its burden of proof on its Lanham Act false advertising claim, Nutramax Labs must show that the #1 Claims[1] are "literally false" (i.e. "false on their face") or, while not "literally false," tend to confuse a "statistically significant part" of their target audience and therefore are impliedly false.[2]  Accordingly, extrinsic evidence—only relevant to implied falsity—must be

---

[1] The claims in dispute are that Zesty Paws is the "#1 Brand of Pet Supplements in the USA," "USA's #1 Brand of Pet Supplements, and the "#1 selling Pet Supplement Brand in the USA" (individually, a "#1 Claim" and collectively, the "#1 Claims").
[2] *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007); cases cited at pp. 7-8, *infra*.

submitted in the form of market research and consumer surveys that show how the claims are

perceived by actual consumers of the product.  To be helpful to the Court, therefore, any expert

evidence offered in support of Nutramax Labs' PI Motion must be grounded in both actual

consumer data and sound scientific principles, consistent with the factual record, and relevant to

the claims asserted.  *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579

(1993).  Because Professor Novemsky's Report and opinions fail to meet these requirements, Zesty

Paws respectfully requests that they be excluded when ruling on Nutramax Labs's PI Motion.

Professor Novemsky's assessment of whether "Nutramax" is a brand within the pet

supplements market and the impacts the #1 Claims on consumers is unreliable and unhelpful to

the Court for several reasons.  First, there is an absolute dearth of empirical, methodological, or

factual support for Professor Novemsky's opinions. He employed no methodology that meets any

of *Daubert*'s reliability metrics.  Second, Professor Novemsky lacks experience with the particular

issues on which he opines that could bridge his lack of factual or methodological support because

he has no relevant background or experience in the pet supplement market.

Professor Novemsky's opinions rely upon articles which, by and large, relate to abstract

consumer psychological perceptions.  The only reason for citing these articles would be to make

an argument of consumer confusion or potential consumer confusion from the #1 Claims.

However, Professor Novemsky conducted no consumer surveys, interviews, or focus groups to

demonstrate that any issue raised in his cited articles has any application to this case.

None of the articles relied upon by Professor Novemsky have anything to do with the

following issues relevant to the PI Motion: (1) how consumers determine "brand" from product

packaging; (2) the effect on consumers' determination of "brand" of product packaging containing

superiority claims (for example, Nutramax Labs' claim that Cosequin® is the "#1 Veterinarian

Recommended Brand");  (3) how consumers distinguish "brand" from "manufacturer" based on

product packaging; and (4) design and use of consumer surveys to determine brand recognition with respect to particular products. Accordingly, Professor Novemsky's opinions and cited articles should be excluded, because they are arbitrary and "connected to existing data only by the *ipse dixit* of the expert," the hallmark of inadmissible testimony. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 157 (1999).

For these reasons, detailed more fully below, Zesty Paws respectfully requests that the Court exclude Professor Novemsky's Expert Report and opinions because this evidence fails to meet the admissibility standards of Rule 702 and *Daubert*.

<u>**OVERVIEW OF PROFESSOR NOVEMSKY'S PROFFERED OPINIONS**</u>

Professor Novemsky contends that he was retained by Nutramax Labs' counsel to "review and develop opinions" regarding the #1 Claims based on his "expertise in consumer decision making, consumer experiences, consumer information processing, marketing research, and consumer psychology." (Edlin Decl. Ex. 2 ("Report") ¶ 2.) Neither his resume nor his Report suggest that Professor Novemsky has any experience studying or working in the pet supplement market. Nevertheless, Professor Novemsky offers four opinions in this case.

*First*, Professor Novemsky opines that "'NUTRAMAX' is a brand in the Pet Supplement Category." (*Id.* ¶ 3.) Although over the course of his career Professor Novemsky has "conducted, supervised, or evaluated hundreds of surveys in litigation, academic, and consulting contexts, including many related to consumer behavior and information processing, customer satisfaction, branding, consumer experiences, and advertising related issues" (*id.* Ex. 2 at Section I ¶ 5), Professor Novemsky did not conduct a consumer survey in this case to determine whether consumers in the pet supplement market identify "Nutramax" as a brand. Instead, he bases this opinion on (a) a web-based dictionary definition of "brand" (Report ¶ 10); (b) several journal articles, none of which involve the parties in this case, any other company or brand in the pet

3

supplement industry, or surveys of consumers in the pet supplement market (*id.* ¶¶ 11-19); and (c) his personal "investigation of the pet supplements marketplace," which included examining web-based platforms like Chewy.com and Amazon.com, the websites of Walmart, PetSmart, and Petco, as well as an "in-store display for Nutramax products at a Costco warehouse." (*Id.* ¶ 12.) Professor Novemsky concedes that he does not "know whether the term 'Nutramax' appears on *every* listing for *every* product across *every* platform or sales channel" but still maintains that "it is clear that the term 'Nutramax' is used consistently and prominently to identify the source of any particular Nutramax Labs product. (*Id.* ¶ 13.)

Professor Novemsky does not identify which of Nutramax's brands' product packaging he reviewed and only references three of Nutramax's brands—Cosequin®, Dasuquin®, and Imuquin®—in his entire Report. (*Id.* ¶ 18.) Professor Novemsky concedes that these three products are their own "subbrands" (*id.*) but opines that "there is no contradiction in having distinct subbrands (e.g., DASUQUIN) and a Masterbrand (NUTRAMAX)." (*Id.* ¶ 22.)

*Second*, Professor Novemsky opines that the #1 Claims "have a substantial impact on consumer perception and behavior." (*Id*. at 5.) Professor Novemsky did not conduct a consumer survey to substantiate this opinion, but instead relied on his own review of the #1 Claims and a series of journal articles, none of which involve the parties in this case, any other company or brand in the pet supplement industry, or surveys of consumers in the pet supplement market. (*Id.* ¶¶ 25-30.)

*Third*, Professor Novemsky opines that the various versions of the Euromonitor Footnote, or as he puts it—the "disclaimers"—are "ineffective." (*Id.* ¶ 32.) Professor Novemsky opines that Zesty Paws "used" the Euromonitor Footnote "to modify its #1 Claims" and that the Euromonitor Footnote is "likely to be missed or misunderstood by a substantial number or consumers." (*Id.* ¶ 42.) Professor Novemsky did not conduct a consumer survey to substantiate his claim that

consumers will "miss" or "misunderstand" the Euromonitor Footnote, but instead relied on his own review of the Euromonitor Footnote and a series of journal articles, none of which involve the Euromonitor Footnote or any footnote or disclaimer even remotely similar to the Euromonitor Footnote.  (*Id.* ¶¶ 33-41.)

Professor Novemsky opines that the Euromonitor Footnote "likely" leads consumers to "the false impression that Zesty Paws is the #1 selling brand for pet supplements in the USA *in the entire pet supplement market* including the vet channel."  (*Id.* ¶ 41a.)  He bases this opinion on his understanding that "the veterinary channel accounts for approximately 42% of Nutramax's pet supplement dollar sales and 24% of Nutramax's pet supplement unit sales, and that Zesty Paws does not sell through the veterinary channel." (*Id.*)  However, Professor Novemsky did not conduct any likelihood of confusion survey to verify any consumer "impressions," so his opinion is merely conclusory and speculative.

*Fourth*, Professor Novemsky opines that the #1 Claims affect consumer behavior to Nutramax Labs' detriment.  (*Id.* at 10.)  Professor Novemsky did not conduct a consumer survey to substantiate this opinion, nor did he review Nutramax Labs' or Zesty Paws' sales or revenues from the time Zesty Paws began displaying the #1 Claims.  Instead, he relied solely on a series of journal articles and books in rendering this opinion.  (*Id.* ¶¶ 43-53.)

## ARGUMENT

It is the district court's responsibility to "fulfill the 'gatekeeping' function of making certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Nimely v. City of N.Y.*, 414 F.3d 381, 396 (2d Cir. 2005) (quoting *Kumho Tire*, 526 U.S. at 152).  Rule 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Where "the proposed expert testimony is not of a technical nature, but rather falls within the ambit of social science, this Court is guided by the objective of the *Daubert* factors, and not a mechanical application of each one." *U.S. v. Paracha*, 2006 WL 12768, at *19 (S.D.N.Y. Jan. 3, 2006), *aff'd*, 313 F. App'x 347 (2d Cir. June 19, 2008). "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *Almeciga v. Ctr. for Investigative Reporting, Inc.,* 185 F. Supp. 3d 401, 415 (S.D.N.Y. 2016) (quoting *U.S. v. Williams,* 506 F.3d 151, 160 (2d Cir. 2007)). Whether an expert is qualified to provide testimony is a threshold determination that requires the court to consider the totality of the expert's qualifications, including knowledge, skill, experience, training or education. *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 642 (S.D.N.Y. 2014).

Expert testimony that is "speculative or conjectural," or "connected to existing data only by the *ipse dixit* of the expert," is inadmissible. *See Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) (citations omitted).  Expert testimony that is unhelpful to the factfinder or usurps the province of the jury is inadmissible. *Estate of Jaquez v. City of N.Y.,* 104 F. Supp. 3d, 414, 428 (S.D.N.Y. 2015); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 566 (S.D.N.Y. 2007) (expert testimony that addresses "lay matters which the trier of fact is capable of understanding and deciding without the expert's help" inadmissible) (citations omitted).  Expert testimony that usurps the role of the judge in instructing the jury as to applicable law is inadmissible. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004).

6

Here, Nutramax Labs cannot come close to meeting its burden of demonstrating the admissibility of Professor Novemsky's improper opinions.

## I. PROFESSOR NOVEMSKY'S OPINIONS ARE UNRELIABLE AND NOT BASED ON ANY DISCERNIBLE METHODOLOGY

Where an expert's testimony does not rest on traditional scientific methods, the court may permit expert testimony where a proposed expert witness bases his testimony on practical "experience" rather than scientific analysis. *Collado v. City of N.Y.*, 2017 WL 4533772, at \*6-7 (S.D.N.Y. Sept. 27, 2017). But "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (*citing* Fed. R. Evid. 702 Advisory Committee Note).

Professor Novemsky fails to substantiate any of his four opinions. Although he claims to have "conducted, supervised, or evaluated hundreds of surveys in litigation, academic, and consulting contexts, including many related to consumer behavior and information processing, customer satisfaction, branding, consumer experiences, and advertising related issues" (Edlin Decl. Ex. A at Section I ¶ 5), Professor Novemsky failed to conduct a consumer survey with respect to *any* of his opinions in this case as is required in Lanham Act cases involving alleged false or misleading advertising. *See Johnson & Johnson \* Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 299 (2d Cir. 1992) ("the success of a plaintiff's implied falsity claim usually turns on the persuasiveness of a consumer survey"); *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 317 (2d Cir. 1982) ("[w]hen the challenged advertisement is implicitly false . . . , its tendency to violate the Lanham Act . . . should be tested by public reaction") (*superseded on other grounds*); *Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*, 348 F. Supp. 2d 165, 184 (S.D.N.Y. 2004) (implied falsity not established because "Plaintiff has [not]

introduced the requisite extrinsic evidence of consumer reaction showing that CIBA's promotional materials tend to mislead or confuse the target audience"); *Upjohn Co. v. Am. Home Prods.*, 598 F. Supp. 550, 556 (S.D.N.Y. 1984) ("Plaintiff, therefore, *must* submit evidence in the form of market research and consumer surveys that demonstrates how the advertising is perceived by consumers").

Instead, Professor Novemsky's opinion that "Nutramax" is a brand relies on (a) a dictionary definition of "brand" (Report ¶ 10); (b) several journal articles (*id.* ¶¶ 11-19); and (c) his personal "investigation."   (*Id.* ¶ 12.)   Professor Novemsky's failure to articulate any methodology constitutes the "essence of unverifiable subjectivity, amounting to the sort of *ipse dixit* connection between methodology and conclusion." *Nimely*, 414 F.3d at 399;  *see also Cross Com. Media, Inc. v. Collective, Inc.,* 2014 WL 11343849, at *8-9 (S.D.N.Y. Aug. 21, 2014) (excluding testimony of expert who "did not perform a consumer survey" but rather opined on defendant's internal documents and definitions of words, because "he is doing no more than that which the finder of fact could him or herself do");  *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 644-47 (S.D.N.Y. 2016), *aff'd sub nom. LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA*, 720 F. App'x 24 (2d Cir. 2017) (expert's social media review and Google searches coupled with personal and professional "insights" was a "methodology [that] does not come close to withstanding scrutiny under *Daubert*" because it "failed entirely to show a sufficiently rigorous analytical" method); *see also Maloney v. Singas,* 351 F. Supp. 3d 222, 229 n.12 (E.D.N.Y. 2018) (rejecting opinion based on "basic internet searches and his own anecdotal observations" because this is "precisely the kind of speculation and conjecture the Federal Rules of Evidence were intended to bar").

That Professor Novemsky failed to employ a reliable methodology in opining that "Nutramax" is a brand is further demonstrated by his conceded and intentional failure to even

examine all of Nutramax Labs' advertising.  Clearly, Professor Novemsky did not consider any of the following facts, which he would have learned had he examined Nutramax Labs' product packaging and website advertising: (1) that Cosequin® and Dasuquin® have their own individual websites, which identify these products as individual brands, and do not identify any Nutramax entity as the "brand" (*see* Declaration of Michael Fergus, dated January 4, 2024 (ECF 21) ¶¶ 19-22);  (2) the product packaging for Cosequin® and Dasuquin®, which claim that Cosequin® is the "#1 Veterinarian Recommended Brand," and Dasuquin® is the "#1 Joint Health  Brand Recommended by Veterinarians," and make no reference whatsoever to "Nutramax" being the "brand" (*id*. ¶ 21); (3) no product packaging or Nutramax Labs website description of the products identifies any Nutramax Labs product as the "Nutramax" brand (*id*. ¶¶ 19-21); and (4) in superiority claims where the name "Nutramax" appears, the company identifies itself as the "#1 Veterinarian Recommended Pet Supplement Company" (i.e., the manufacturer), and never as the "#1 Pet Supplement Brand" (*id*. ¶ 21).

Moreover, Professor Novemsky's assertion that Nutramax Labs' product packaging has the "Nutramax" name on it, thereby identify the "source" of the products (Report ¶ 13), is irrelevant. The "source" of Nutramax Labs' products means the manufacturer, and the placement of a manufacturer's name on a product package does not automatically elevate the name of the manufacturer to the "brand" just because the manufacturer's name appears on it.  (*See* ECF 32 ¶ 21).  Professor Novemsky's failure to articulate any methodology for examining the particular products he examined, and conscious disregard of the critical facts identified above and plainly evident in Nutramax Labs' product packaging and websites, is alone a ground for inadmissibility. *See Mason v. AmTrust Fin. Servs., Inc.*, 2020 WL 7425254, at *5 (S.D.N.Y. Dec. 18, 2020) (excluding expert "who described no methodology in his expert report" for his opinions).

Professor Novemsky's opinions regarding the purported "ineffectiveness" of the Euromonitor Footnote is equally speculative as he relies on his own review of the Euromonitor Footnote and his own selection of journal articles, not a consumer survey to assess any likelihood of confusion. *See First Health Grp. Corp. v. United Payors & United Providers, Inc.*, 95 F. Supp. 2d 845, 849 (N.D. Ill. 2009) (plaintiff cannot solely rely on the testimony of expert witnesses who, having reviewed representations made by defendant, would opine that consumers would have been deceived by the representations, because "the personal opinion of an expert as to what a consumer would understand is not enough") (citation omitted).

Nor can Professor Novemsky base his opinions on any personal experience as a substitute for methodology. Professor Novemsky makes no effort to tie his experience as a professor, a litigation consultant, and working for various companies, to the opinions provided in this case, nor can he, as his resume indicates he has no experience in the pet supplement market. The most reliable evidence of what constitutes the proper brand comparison between Zesty Paws and Nutramax Labs would be a survey of consumers in the relevant universe, and data from independent consumer research companies such as Nielsen Consumer, LLC—not the uninformed and speculative opinions of Professor Novemsky.

Given that Professor Novemsky's opinion that Nutramax is a brand is not based on sufficient methodology or experience, it amounts to nothing more than *ipse dixit*, which must be excluded. *See, e.g.*, *Piepes v. NAI Entm't Holdings LLC*, 394 F. Supp. 3d 315, 317-18 (E.D.N.Y. 2019) (excluding expert where "[n]o explanation is given for why [expert] reached this conclusion or how he did so," noting that "a fact finder [must be able] to follow his reasoning and come to the same conclusion" and that absence of same makes "it impossible for an adversary to conduct cross-examination . . . [and] for a Court to conduct a *Daubert* inquiry"); *Scentsational Techs., LLC v. Pepsi, Inc.*, 2018 WL 1889763, at *6 (S.D.N.Y. Apr. 18, 2018) (excluding opinions as "*ipse dixit*,

pure speculation, or both" where "analytical gap between known facts and [expert's] assertions [was] enormous").

## II.   PROFESSOR NOVEMSKY'S OPINIONS REGARDING THE EUROMONITOR FOOTNOTE ARE INADMISSIBLE BECAUSE THEY ARE IRRELEVANT, SPECULATIVE, AND USURP THE ROLE OF THE FACTFINDER

### A.   Professor Novemsky's Euromonitor Footnote Opinion is Irrelevant to Whether Zesty Paws' #1 Claims Are False or Misleading

Under Rule 702, expert opinions or testimony must be relevant to be admissible. Relevance can be expressed as a question of "fit"—that is, "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Pearlman v. Cablevision Sys. Corp.*, 2015 WL 8481879, at \*7 (E.D.N.Y. Dec. 8, 2015) (citing *Daubert*, 509 U.S. at 591) (excluding expert opinions).

Although Professor Novemsky opines at length regarding the "effectiveness" of the Euromonitor Footnote (Report ¶¶ 32-42), the Footnote's effect on Zesty Paws' #1 Claims is irrelevant to the central issue in this dispute—whether "Nutramax" is a pet supplement brand. Because Nutramax Labs does not contend that the inclusion of vet sales would render the #1 Claims false, Professor Novemsky's opinion as to the Euromonitor Footnote is "irrelevant," "unhelpful and misleading to the trier of fact" and should be excluded. *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at \*8 (S.D.N.Y. Sept. 16, 2015) (excluding expert opinion).

### B.   Professor Novemsky's Euromonitor Footnote Opinion Usurps the Role of the Factfinder

Even if Professor's opinion on the Euromonitor Footnote were relevant (it is not), this opinion is still inadmissible because it "usurps" the role of both the judge and jury. *Nimely*, 414 F.3d at 395-397.  Indeed, the Second Circuit has "consistently held" that:

11

> [E]xpert testimony that usurps either the role of the trial judge **in instructing** the jury as to the applicable law or the role of jury in applying the law to the facts before it by definition does not aid the jury in making a decision; rather **it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's.**

*Id.* at 397 (citations omitted, emphases added). An expert that crosses the line into instructing the jury how it should weigh evidence—and necessarily seeks for the jury to accept the expert's judgment as its own—should be excluded. *See, e.g.*, *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (expert testimony "regarding the ultimate legal conclusion entrusted to the jury . . . should have been excluded"; no expert should "compete with the judge in the function of instructing the jury"); *Highland Capital Mgmt, L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) ("[N]o expert may 'supplant the role . . . of the jury in interpreting the evidence.'") .

Against all of this established law, Professor Novemsky opines that the Euromonitor Footnote is "ineffective" and "confusing." (Report at ¶¶ 32, 39.) This crosses the line into opinion that "merely tell[s] the jury what result to reach," which is forbidden. *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*, 14 F. Supp. 2d 391, 398 (S.D.N.Y. 1998). Such an assertion is best determined from a likelihood of confusion survey; Novemsky failed to conduct such a survey. Novemsky's uninformed speculation about the Euromonitor Footnote should be stricken.

## III.   PROFESSOR NOVEMSKY'S OPINIONS CONCERNING ZESTY PAWS' OR CONSUMERS' STATE OF MIND, MOTIVATION, OR INTENT ARE INADMISSIBLE AS IMPROPER AND UNRELIABLE

It well-settled that "opinions concerning the motive, intent and state of mind" of the parties "have no basis in any relevant body of knowledge or expertise" and thus "lie outside the bounds of expert testimony." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 545-47 (S.D.N.Y. 2004). Such opinions are inadmissible because it is inappropriate for experts to "assume the role of advocates . . . by arguing as to the intent or motives" of the other side, and in any event "it describes lay matters which a jury is capable of understanding and deciding without the expert's

help" after hearing from fact witnesses and reviewing the factual evidence before it. *Id.* (citation omitted). Such testimony is also inadmissible because an expert opinion about alleged intent, knowledge, understanding, state of mind, assumptions, or expectations, amounts to nothing more than speculation, as the expert had no personal involvement. *See, e.g.*, *LaSalle Bank Nat. Ass'n v. CIBC Inc.*, 2012 WL 466785, at \*7, \*12-13, \*18 (S.D.N.Y. Feb. 14, 2012) (excluding expert's opinions on parties' "expectations," "intent" and "assumptions" as "pure speculation"); *Highland Capital Mgmt.*, 379 F. Supp. 2d at 469 (excluding opinions regarding the knowledge, "state of mind and motivations" of parties involved in the relevant transaction as nothing more than expert's "own speculation"); *Kidder*, 14 F. Supp. 2d at 398 (excluding testimony going to "mental processes" such as what parties "knew, believed, assumed, or understood"). Indeed, what the parties intended, thought, understood, assumed, or expected "must come from the trial testimony of the individuals concerned," *i.e.*, fact witnesses, not an expert. *Kidder*, 14 F. Supp. 2d at 398.

Here, in attempt to side-step the fact that he has no likelihood of confusion consumer survey, Professor Novemsky renders a multitude of opinions that characterize the alleged motivations, knowledge, understanding, expectations, or state of mind of consumers in the pet supplement market, including opinions regarding what consumers in the pet supplement market "would" or "will" "see," "perceive," "observe," "think," "infer," "choose," "rely on," "assume," "view," "understand," "misunderstand," "process," "pay attention to," "attend to," "give," or "generally do not like," do "not want," are "willing to" do, are "motivated" by, and are "driven by." (Report ¶¶ 11, 25, 26-28, 30, 32-35, 37, 38, 40-42, 44, 46, 48, 50-53, 56, 58.) Without a consumer survey, Professor Novemsky has nothing to support any of these wild and speculative opinions other than his own personal beliefs, unsupported by any recognized methodology or process. *See First Health Grp.*, 95 F. Supp. at 849. This is not reliable expert testimony, and his opinions are inadmissible as a matter of law.

13

Finally, Professor Novemsky offers only *ipse dixit* opinions regarding (a) what Zesty Paws purportedly "intended" with the #1 Claims (Report ¶ 41a); (b) Zesty Paws' purported "use" of the Euromonitor Footnote to "modify" the #1 Claims (*id.* ¶ 42); and (c) Zesty Paws' purported "induce[ment]" of consumers to purchase its pet supplement products (*id.* ¶¶ 50, 58); s*ee AU New Haven, LLC v. YKK Corp.*, 2019 WL 1254763, at *13 (S.D.N.Y. Mar. 19, 2019), *objections overruled*, 2019 WL 2992016 (S.D.N.Y. July 8, 2019) (expert's testimony regarding defendant's intent to "induce" infringement was improper "[b]ecause science has not yet invented a way to read minds"); *In re Rezulin*, 309 F. Supp. 2d at 309.  These subject areas fall well outside the scope of Novemsky's general expertise in social psychology, and without relevant knowledge or experience, these opinions are simply his personal conclusions, speculation, and advocacy on disparate topics.

## CONCLUSION

For the foregoing reasons, Zesty Paws respectfully requests that the Court exclude the report and opinions of Nathan Novemsky, Ph.D.

Dated: New York, New York
       January 9, 2024                Respectfully submitted,

                                  GREENBERG TRAURIG, LLP

                              By: /s/ *Richard A. Edlin*
                                    Richard A. Edlin
                                    Anne C. Reddy
                                    Noah Lindenfeld
                                    One Vanderbilt Avenue
                                    New York, New York 10017
                                    (212) 801-9200
                                    edlinr@gtlaw.com
                                    reddya@gtlaw.com
                                    noah.lindenfeld@gtlaw.com

                                    *Attorneys for Plaintiff/Counterclaim Defendant Zesty Paws LLC*