**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZESTY PAWS LLC, | |
| Plaintiff/Counterclaim Defendant, | |
| v. | Civil Action No. 1:23-cv-10849-LGS |
| NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC., | **JURY TRIAL DEMANDED** |
| Defendants/Counterclaim Plaintiffs. | |

**NUTRAMAX'S MEMORANDUM OF LAW IN
OPPOSITION TO ZESTY PAWS LLC'S MOTION TO EXCLUDE
<u>THE REPORT AND OPINIONS OF NATHAN NOVEMSKY, Ph.D.</u>**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

LEGAL STANDARD ................................................................................................... 3

ARGUMENT AND CITATION TO AUTHORITY ....................................................... 5

I.    Dr. Novemsky Is Eminently Qualified to Render His Opinions in this Case ........................ 5

II.   Dr. Novemsky Bases His Opinions on Sufficient Facts or Data ........................................ 8

      A.    Dr. Novemsky's Systematic Analysis of the Facts ......................................... 8

      B.    The Court Should Not Be Persuaded by Zesty Paws' Counterarguments .................. 10

            1.    Dr. Novemsky Is Not Required to Conduct a Survey to Render His
                  Opinions ............................................................................ 10

            2.    Dr. Novemsky Adequately Accounted for the Facts in Rendering His
                  Opinions ............................................................................ 12

III.  Dr. Novemsky's Declaration and Report Convey a Reliable and Sound Professional
Analysis ............................................................................................................... 13

      A.    Dr. Novemsky Explains How He Applied His Expertise in Marketing and Consumer
      Decision Making to the Facts of this Case ........................................................... 14

      B.    Zesty Paws' Attacks on the Reliability of Dr. Novemsky's Specific Opinions Are
      Meritless ..................................................................................................... 16

            1.    Nutramax Is a Brand in the Pet Supplements Category ..................................... 16

            2.    The #1 Claims Impact Consumer Behavior and Purchasing Decisions and
                  Will Cause Irreparble Harm ...................................................... 18

            3.    The Disclaimers to the #1 Claims Are Ineffective ........................................... 20

IV.   Dr. Novemsky's Opinions Will Assist the Trier of Fact ................................................ 21

CONCLUSION .......................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alfa Corp. v. Oao Alfa Bank*,
    475 F.Supp.2d 357 (S.D.N.Y. 2007).........................................................................................4

*Allen v. Term Commodities, Inc. (In re Term Commodities Cotton Futures Litig.)*,
    No. 12-CV-5126 (ALC), 2020 U.S. Dist. LEXIS 181704 (S.D.N.Y. Sep. 30, 2020) .........4, 11

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)......................................................................................................4

*Arista Recs. LLC v. Usenet.com, Inc.*,
    608 F. Supp. 2d 409 (S.D.N.Y. 2009)......................................................................................7

*Bailey v. Rite Aid Corp.*,
    338 F.R.D. 390 (N.D. Cal. 2021)...............................................................................10, 17, 22

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
    20-cv-8686, 2023 U.S. Dist. LEXIS 55754 (S.D.N.Y. Mar. 30, 2023)...................................3

*Cary Oil Co. v. MG Refin. & Mktg., Inc.*,
    2003 U.S. Dist. LEXIS 6150 (S.D.N.Y. Apr. 11, 2003).........................................................5

*CDX Liquidating Tr. v. Venrock Assocs.*,
    411 B.R. 571 (N.D. Ill. 2009) ...............................................................................15, 23, 24

*Coca-Cola Co. v. Tropicana Prods., Inc.*,
    690 F.2d 312 (2d Cir. 1982)....................................................................................................11

*Cross Commerce Media, Inc. v. Collective, Inc.*,
    No. 13-cv-2754 (KBF), 2014 U.S. Dist. LEXIS 117244 (S.D.N.Y. Aug. 21, 2014) .............17

*Crown Cork & Seal Co., Inc. Master Ret. Tr. v. Credit Suisse First Boston Corp.*,
    2013 U.S. Dist. LEXIS 34368 (S.D.N.Y. Mar. 12, 2013) .......................................................5

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).......................................................................................................3, 4, 13

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
    2019 U.S. Dist. LEXIS 63202 (E.D.N.Y. Feb. 21, 2019)................................................20, 23

*First Health Grp. Corp. v. United Payors & United Providers, Inc.*,
    95 F. Supp. 2d 845 (N.D. Ill. 2009) ......................................................................................21

*Hadley v. Kellogg Sales Co.*,
    No. 16 Civ. 04955, 2019 U.S. Dist. LEXIS 136791 (N.D. Cal. Aug. 13, 2019)....................12

iii

*Hertz Corp. v. Avis, Inc.*,
    867 F. Supp. 208 (S.D.N.Y. 1994) ......................................................................11

*In re Fosamax Prods. Liab. Litig.*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009)............................................................4, 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    638 F. Supp. 3d 227 (E.D.N.Y. 2022) ...........................................................9, 24

*In re Zyprexa Prods. Liab. Litig.*,
    489 F. Supp. 2d 230 (E.D.N.Y. 2007) ............................................................3, 7

*Johnson & Johnson v. Smithkline Beecham Corp.*,
    960 F.2d 294 (2d Cir. 1992).............................................................................11

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*,
    2006 U.S. Dist. LEXIS 51869 (S.D.N.Y. July 27, 2006) ...................................21

*Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*,
    348 F. Supp. 2d 165 (S.D.N.Y. 2004).............................................................11

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999).........................................................................................13

*Lickteig v. Cerberus Cap. Mgmt., L.P.*,
    589 F.Supp.3d 302 (S.D.N.Y. 2022)................................................................19

*Lucky Brand Dungarees, Inc. v. Ally Apparel Res. LLC*,
    No. 05 Civ. 6757, 2009 U.S. Dist. LEXIS 35707 (S.D.N.Y. Apr. 6, 2009) ............11

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
    209 F. Supp. 3d 612 (S.D.N.Y. 2016)..............................................................17

*Maloney v. Singas*,
    351 F. Supp. 3d 222 (E.D.N.Y. 2018) ..............................................................17

*Marini v. Adamo*,
    995 F. Supp. 2d 155 (E.D.N.Y. 2014) .........................................................20, 21

*Marketing/ Trademark Consultants, Inc. v. Caterpillar, Inc.*,
    2000 U.S. Dist. LEXIS 7952, No. 98 Civ. 2570, 2000 WL 744371 (S.D.N.Y. June 9, 2000) .................................................................................................................22

*Marketquest Grp., Inc. v. BIC Corp.*,
    No. 11-cv-618-BAS (JLB), 2018 U.S. Dist. LEXIS 62361 (S.D. Cal. Apr. 12, 2018) ... passim

*Mason v. AmTrust Fin. Servs., Inc.*,
    2020 U.S. Dist. LEXIS 238359 (S.D.N.Y. Dec. 18, 2020) ...................................17

*McCullock v. H.B. Fuller Co.*
   61 F.3d 1038 (2d. 1995)...........................................................................................22

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005)...............................................................................4, 17

*Pearlstein v. Blackberry Ltd.*,
   2021 U.S. Dist. LEXIS 172218 (S.D.N.Y. Sep. 10, 2021)............................... passim

*Pension Cmte. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   691 F. Supp. 2d 448 (S.D.N.Y. 2010)......................................................................13

*Piepes v. NAI Entm't Holdings LLC*,
   394 F. Supp. 3d 315 (E.D.N.Y. 2019) .....................................................................17

*Price v. L'Oréal United States, Inc.*,
   No. 17 Civ. 614, 2020 U.S. Dist. LEXIS 153255 (S.D.N.Y. Aug. 24, 2020) ........12

*Roman v. Sprint Nextel Corp.*,
   No. 12-CV-276 (VEC), 2014 U.S. Dist. LEXIS 159707 (S.D.N.Y. Nov. 13, 2014) ..............22

*Scentsational Techs., LLC v. Pepsi, Inc.*,
   2018 U.S. Dist. LEXIS 24375 (S.D.N.Y. Feb. 14, 2018).......................................18

*SEC v. Ripple Labs, Inc.*,
   2023 U.S. Dist. LEXIS 156951 (S.D.N.Y. Mar. 6, 2023) .........................................7

*SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck*
   *Consumer Pharms. Co.*,
   906 F. Supp. 178 (S.D.N.Y. 1995) ....................................................................11, 21

*SourceOne Dental, Inc. v. Patterson Cos.*,
   No. 15-cv-5440 (BMC), 2018 U.S. Dist. LEXIS 79291 (E.D.N.Y. May 10, 2018) ..............20

*Tardif v. City of New York*,
   344 F. Supp. 3d 579 (S.D.N.Y. 2018).......................................................................3

*TC Sys. Inc. v. Town of Colonie*,
   213 F. Supp. 2d 171 (N.D.N.Y. 2002) .......................................................................5

*Tiffany (N.J.) Inc. v. eBay, Inc.*,
   576 F. Supp. 2d 457 (S.D.N.Y. 2007)........................................................................5

*Tomra of N. Am., Inc. v. Count & Crush, LLC*,
   No. 1:18-CV-1266, 2023 U.S. Dist. LEXIS 164915 (N.D.N.Y. Sep. 18, 2023)................4, 21

*United States v. Joseph*,
   542 F.3d 13 (2d Cir. 2008)........................................................................................14

*United States v. Williams*,
    506 F.3d 151 (2d Cir. 2007)..................................................................................3

*Upjohn Co. v. Am. Home Prods.*,
    598 F. Supp. 550 (S.D.N.Y. 1984) .....................................................................11

*Wechsler v. Hunt Health Systems, Ltd.*,
    381 F. Supp. 2d 135 (S.D.N.Y. 2003).............................................................8, 22

*Westchester Media Co. L.P. v. PRL United States Holdings*,
    NO. H-97-3278, 2001 U.S. Dist. LEXIS 17468 (S.D. Tex. Oct. 23, 2001) ...........................20

RULES

Fed. R. Evid. 401 ....................................................................................................23

Fed. R. Evid. 702 ................................................................................................ passim

Advisory Committee Notes to the 2000 Amendments, Fed. R. Evid. 702 ....................................13

Fed. R. Evid. 703 ......................................................................................................8

STATUTES

Lanham Act..............................................................................................................11

OTHER AUTHORITIES

Abdelmajid Amine, *Consumers' True Brand Loyalty: The Central Role of Commitment*,
    *6* J. STRAT. MKTG 305 (1998) .........................................................................19

Aumyo Hassan & Sarah J. Barber, *The Effects of Repetition Frequency on the Illusory
    Truth Effect*, 6 COGN. RSCH.: PRINC. & IMPLIC.1 (2021) ...............................................19

Christian Unkelbach et. al., *Truth by Repetition:Explanations and Implications*, 28
    CURR. DIRECTIONS PSYCH. SCI. 247 (2019) ...........................................................19

Dana-Nicoleta Lascu & George Zinkhan, *Consumer Conformity: Review and
    Applications for Marketing Theory and Practice* ....................................................19

Daniel Kahneman et al., *Anomalies: The Endowment Effect, Loss Aversion, and Status
    Quo Bias* 5 *J. Econ. Persp.* 193 (1991).............................................................19

Daryl J. Bem, *Self-perception Theory*, 6 ADVANS. EXPER. SOC. PSYCH. 1 (1972)..............................19

Gita Venkataramani Johar, *Untangling the Web of Misinformation and False Beliefs*, 32
    J.CONS PSYCH. 374 (2022).................................................................................19

Ilana Ritov & Jonathan Baron, *Status-Quo and Omission Biases,*
 *5 J. RISK AND UNCERT.. 49 (1992)* ...................................................................................19

Lakshman Krishnamurthi & S.P. Raj, *An Empiricla Analysis of the Relationship Between*
*Brand Loyalty and Consuemr Price Elasticity*, 10 MKTG. SCI. 172 (1992)................................19

Linda L. Hellofs & Robert Jacobson, *Market Share and Customers' Perceptions of*
 *Quality: When Can Firms Grow Their Way to Higher Versus Lower Quality?* ....................19

Matthew L. Stanley et al., *The Cognitive Processes Underlying False* Belifs, 32 J. CONS.
 PSYCH. 359 (2022)............................................................................................19

Richard H. Thaler & Cass R. Sunstein, *Nudge: Improving Decisions About Health,*
 *Wealth, and Happiness* p. 69, 184 (Penguin Books, 2009) .....................................19

Wendy Wood & David T. Neal, *The Habitual Consumer,*
 19 J. CONS. PSYCH. 579 (2009).........................................................................19

William Samuelson & Richard Zeckhauser, *Status Quo Bias in Decision Making* 1 J.
 RISK AND UNCERT. 7 (1988) ..............................................................................19

## INTRODUCTION

Dr. Nathan Novemsky is a prominent expert in the field of consumer decision making, consumer information processing, and consumer psychology, with substantial experience studying branding and marketing-related issues. (Declaration of Dr. Nathan Novemsky, Dkt. 14, ("Novemsky Decl.") ¶ 1, Ex. A pp. 6-7; *see generally id.* Ex. A at pp. 2-15 (Dr. Novemsky curriculum vitae)). He obtained his Ph.D. in social psychology from Princeton and is a tenured professor at Yale, where he has taught for over 20 years in Yale's School of Management and over 10 years in the Psychology Department on subjects including consumer behavior, judgment, and decision-making. (*Id.*) He has led seminars attended by thousands of corporate executives on how to effectively market to and communicate with consumers, and he has worked with companies in a variety of industries—including the food and beverage, consumer packaged goods, health products, food service, tech, pharmaceutical, automobile, and credit card industries—to help them "better understand consumer perception, judgment, and choice issues." (*Id.* Ex. A pp. 2-7). In other words, Dr. Novemsky has spent his impressive career studying how consumers process and translate marketing information into decisions on what they purchase.

Here, Dr. Novemsky was tasked with applying that knowledge and experience to independently review the #1 Claims at issue in this case. (*Id.* Ex. C ¶ 2). Specifically, Dr. Novemsky developed the following four opinions:

(1) "that 'NUTRAMAX' is a brand in the Pet Supplement Category;

(2) the impact of the #1 Claims on consumer perception and behavior;

(3) the effectiveness of the disclaimers to the #1 Claims; and

(4) the negative impact the #1 Claims have on Nutramax."

(*Id.* Ex. C ¶ 3).

LEGAL02/43911484v5

To challenge a marketing and consumer psychology expert like Dr. Novemsky—whose analysis matches the strength of his knowledge, experience, and credentials—Zesty Paws has resorted to pejoratives. It describes Dr. Novemsky's work as "uninformed and speculative," "wild," "unsound," and exhibiting an "intentional failure" and "conscious disregard" for Zesty Paws' preferred version of the facts. *See generally* Mot. Exclude Rpt. and Opinions of Nathan Novemsky, Ph.D. (Dkt. 37) ("Mot."). One court has summed up such an attack:

> "[T]his motion is the exact sort of, 'That experts' testimony hurts our case, so let's
> try to disqualify the expert' use of *Daubert* that this Court especially dislikes — and
> which are routinely denied."

*Pearlstein v. Blackberry Ltd.*, 2021 U.S. Dist. LEXIS 172218, at *18 (S.D.N.Y. Sep. 10, 2021).

In reality, Zesty Paws overlooks the extensive, detailed analysis Dr. Novemsky applies in his expert report to illustrate the bases for his opinions. He details the facts he reviewed in developing his opinions. He explains the marketing and psychology principles relevant to these facts and applies them. He cites to numerous academic publications to buttress his opinions and the well-researched and studied consumer behaviors on which they are based. And, of course, he does all of this through the lens of his two-decades-plus of research, teaching, and consulting experience.

The Court should have no trouble concluding that Dr. Novemsky's opinions are based on sufficient facts, a reliable analysis, and a reliable application of that analysis to the facts to help the court determine: (a) what is and is not a brand (the key issue in this case); and (b) the impact that the #1 Claims necessarily have on consumers. The Court therefore should reject Zesty Paws' contentions and deny its Motion in its entirety.

## LEGAL STANDARD

Federal Rule of Evidence 702 and *Daubert*, which govern the admissibility of expert testimony, require that an expert be "qualified . . . by knowledge, skill, expertise, training, or education" and that their expert testimony be "based on sufficient facts or data," "relevant," "reliable," and "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 591 (1993); *see also* Fed. R. Evid. 702.[1] The proponent of expert testimony "has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

The Court must begin with the assumption that "a well qualified expert's testimony is admissible," *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007), and "exclusion of such testimony is the exception rather than the rule," *Tardif v. City of New York*, 344 F. Supp. 3d 579, 596 (S.D.N.Y. 2018) (internal quotation marks omitted). Employing this framework, a district court's Rule 702 inquiry entails assessing three factors: "(1) the qualifications of the expert to testify as to a particular matter, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of the expert's testimony (*i.e.*, whether the expert's testimony as to a particular matter will 'assist the trier of fact')." *Better Holdco, Inc. v.*

---

[1] As amended on December 1, 2023, Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Beeline Loans, Inc.*, No. 20-cv-8686, 2023 U.S. Dist. LEXIS 55754 (S.D.N.Y. Mar. 30, 2023) (quoting *Nimely v. City of New York*, 414 F.3d 381, 397, at \*18 (2d Cir. 2005)).

The thrust of a *Daubert* inquiry focuses "on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Alfa Corp. v. Oao Alfa Bank*, 475 F.Supp.2d 357, 360 (S.D.N.Y. 2007) (quoting *Daubert*, 509 U.S. at 595). Objections that amount to no more than disagreements with expert conclusions have no role in a Rule 702 analysis. *Allen v. Term Commodities, Inc. (In re Term Commodities Cotton Futures Litig.)*, No. 12-CV-5126 (ALC), 2020 U.S. Dist. LEXIS 181704, at \*59-60 (S.D.N.Y. Sep. 30, 2020).

The *Daubert* standard is a "flexible one," *Daubert*, 509 U.S. at 594, "and will necessarily vary from case to case," *Pearlstein*, 2021 U.S. Dist. LEXIS 172218, at \*5 (S.D.N.Y. Sep. 10, 2021) (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002)). In light of the liberal admissibility standards of the Federal Rules of Evidence, exclusion of expert testimony is warranted only when the district court finds "serious flaws in reasoning or methodology." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (citing *Amorgianos*, 303 F.3d at 267). In addition, where there is no concern for "juror confusion or potential prejudice," like during preliminary injunction proceedings or a bench trial, "the court has considerable discretion in admitting the proffered testimony at the trial and then deciding after the evidence is presented whether it deserves to be credited by meeting the requirements of *Daubert* and its progeny." *Tomra of N. Am., Inc. v. Count & Crush, LLC*, No. 1:18-CV-1266 (LEK/DJS), 2023 U.S. Dist. LEXIS 164915, at \*3 (N.D.N.Y. Sep. 18, 2023).

## ARGUMENT AND CITATION TO AUTHORITY

Zesty Paws' Motion should be rejected in its entirety. It disregards key portions of the Novemsky Report, misstates the law regarding the #1 Claims at issue, and mischaracterizes cherry-picked sections in an attempt to discredit them. Not one of these tactics is persuasive.

## I.     Dr. Novemsky Is Eminently Qualified to Render His Opinions in this Case

As a "threshold question," Zesty Paws does not—and cannot—legitimately dispute Dr. Novemsky's qualifications to opine on the facts and evidence at issue in this dispute. For an expert to provide testimony, a court must be satisfied that the expert is qualified "by knowledge, skill, experience, training, or education," and that their "scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702(a). Both requirements are easily satisfied. Dr. Novemsky is an expert in consumer decision making, consumer experiences, consumer information processing, marketing research, and consumer psychology, all of which are germane to the issues in this case.

"Courts within the Second Circuit 'have liberally construed expert qualification requirements' when determining if a witness can be considered an expert." *Cary Oil Co. v. MG Refin. & Mktg., Inc.*, 2003 U.S. Dist. LEXIS 6150, at *1 (S.D.N.Y. Apr. 11, 2003) (quoting *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 174 (N.D.N.Y. 2002)). "Any one of the qualities listed in Rule 702—knowledge, skill, experience, training, or education—may be sufficient to qualify a witness as an expert." *Crown Cork & Seal Co., Inc. Master Ret. Tr. v. Credit Suisse First Boston Corp.*, 2013 U.S. Dist. LEXIS 34368, at *30 (S.D.N.Y. Mar. 12, 2013) (citing *Tiffany (N.J.) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007)). Although the Court arguably could find that Dr. Novemsky is qualified *regardless* of which 702 factor it applies, three bear highlighting:

**Education.** Dr. Novemsky serves as a Professor of Marketing and Psychology at the Yale School of Management, a position he has held for over 10 years. He holds a Ph.D and M.A. in Social Psychology from Princeton. He currently teaches two doctoral courses in the areas of consumer behavior, judgment, and decision making. He has also taught courses, ranging from graduate level courses to seminars for mid- and senior-level executives, about consumer behavior, behavioral decision making, marketing management, customer insights, and effective marketing techniques. (*See generally*, Novemsky Decl., Dkt. 14, Ex. A, pp. 2, 4-5; Ex. C, ¶ 3.)

**Knowledge.** Dr. Novemsky's research focuses on consumer behavior and individual decision-making: how individuals acquire and process information when forming their perceptions and preferences; how product attributes and information impact consumer purchasing decisions; and how different marketing activities impact those consumer purchasing decisions. He also has been published in leading peer-reviewed marketing and psychology journals (like *Journal of Behavioral Decision Making*, *Journal of Consumer Research*, and *Journal of Marketing Research*) on topics including how consumers use information to make judgments and decisions and how framing decisions impacts consumer choice. Dr. Novemsky has served as an Associate Editor for the *Journal of Marketing Research* and on the editorial boards of the *Journal of Consumer Research*, *Journal of Marketing Research*, *Organizational Behavioral and Human Decision Processes*, and *Journal of Consumer Psychology*. (*See generally*, *id.*, Ex. A pp. 2-6; Ex. C ¶ 3.)

**Experience.** Apart from his research and teaching, Dr. Novemsky has worked with dozens of companies on matters concerning consumer perception, judgment, and choice issues. He has worked with brands operating in the food and beverage (Pepsico, Kellogg's), healthcare products (Johnson & Johnson), consumer packaged goods (Procter & Gamble, Colgate), pharmaceutical (Pfizer, Merck), quick service restaurant (McDonald's), technology (Google, IBM), and payment

processing (Visa, American Express) industries, among others. He has also worked on hundreds of surveys in a range of contexts concerning consumer behavior and information processing, consumer satisfaction and experiences, and advertising. He has served as an expert in litigation, opining on matters concerning consumer understanding of consumer packaged goods, products, and services, consumer reactions to advertising, face-to-face marketing, and digital communications, and other marketing and buyer behavior issues. (*Id.*, Ex. C, ¶ 4-5.)

Considering the "totality of the witness's background," Dr. Novemsky both is "qualified as an expert by knowledge, skill, experience, or training" and possesses "knowledge [that] will help the trier of fact to understand the evidence or determine a fact in issue." *Arista Recs. LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009); *In re Zyprexa*, 489 F. Supp. 2d at 282 ("If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent.").

Zesty Paws nevertheless attempts to box out Dr. Novemsky, arguing that "[n]either his resume nor his Report suggest that [he] has any experience studying or working in the pet supplement market." Mot. at 3. But Dr. Novemsky has a wealth of experience dealing with consumer decision making and marketing matters across a range of consumer-facing industries. The pet supplement market falls comfortably in his prior experience and education concerning consumer behavior and marketing, which apply generally across consumer marketing sectors. *See, e.g.*, *SEC v. Ripple Labs, Inc.*, 2023 U.S. Dist. LEXIS 156951, at *14 (S.D.N.Y. Mar. 6, 2023) (rejecting the SEC's argument that the expert was unqualified because "he has never written specifically on virtual currencies," observing that he "has been a tax law professional for twenty years[,] is widely published on federal income tax issues," and is qualified to apply that expertise);

*Wechsler v. Hunt Health Systems, Ltd.*, 381 F. Supp. 2d 135, 142-43 (S.D.N.Y. 2003) (finding Certified Public Accountant with no particular experience in health care industry qualified to analyze accounts of health care company because he has extensive experience in reviewing accounts of other kinds of companies); *Pearlstein*, 2021 U.S. Dist. LEXIS 172218, at *20 (S.D.N.Y. Sept. 10, 2021) (finding the Leonard N. Stern Professor of Business Administration and Professor of Marketing at the Stern School of Business at NYU was "eminently qualified to opine on marketing matters").

Accordingly, this Court may easily conclude that Dr. Novemsky is qualified in the fields of consumer psychology (including consumer decision making, experiences, and information processing), marketing, and marketing research, all of which are relevant to the issues and his testimony in this case.

## II.    Dr. Novemsky Bases His Opinions on Sufficient Facts or Data

Under Rule 703, an expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Here, the Court should readily conclude that Dr. Novemsky's opinions are based on "sufficient facts or data" because he reviewed the key materials in this case and supplemented them with his personal investigation.

### A.  Dr. Novemsky's Systematic Analysis of the Facts

Dr. Novemsky's review of the facts is straightforward but effective. He reviewed the parties' respective positions in this litigation (key correspondence setting forth the parties' positions and Zesty Paws' Complaint). Dr. Novemsky then investigated additional key materials to provide his opinions in this case, including the parties' respective marketing materials. For instance, in connection with his assessment of whether NUTRAMAX is a brand, Dr. Novemsky investigated:

- Nutramax's websites;

- The packaging for Nutramax's products;

- Images of Nutramax products at the wholesaler Costco;

- The websites for third-party retailers of pet supplement products (including Amazon, Chewy, Petco, Walmart, Target, and PetSmart);

- Marketing academic literature, journals, and course materials; and

- Marketing and promotional materials for other third parties (Frito Lay, Apple, Gillette, and Toyota).

(Novemsky Decl. 14-1, Ex. A, p. 6).

In addition, specifically in connection with his assessment of the #1 Claims, Dr. Novemsky also reviewed:

- The #1 Claims themselves, as presented on Zesty Paws' website and in other media (e.g., press release, social media accounts, and trade show displays);

- Zesty Paws' website;

- The packaging for Zesty Paws' products;

- Consumer behavior academic literature and journals; and

- Marketing academic literature and journals.

(*Id.*)

Courts across the country have found that comparable investigations provide a more than sufficient basis for an expert to provide their opinions. In a similar case, the court upheld an expert who, like Dr. Novemsky, relied on academic research, "academic marketing and branding literature," and other print materials (a book, news articles, and other studies) to render her opinions. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 638 F. Supp. 3d 227, 285-86 (E.D.N.Y. 2022). The court observed that, combined with the expert's "extensive qualifications in marketing and consumer decision-making," her investigation and reliance on academic literature about "consumer response when brand promises are violated are sufficient to support" her opinions in the case. *Id.* Other cases have similarly upheld investigations like that

conducted by Dr. Novemsky here. *See, e.g.*, *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 401 (N.D. Cal. 2021) (concluding that the expert's "extensive industry experience," combined with his investigation visiting several Rite Aid stores to examine the placement of OTC products "allows him to reliably and persuasively opine as to the issues of likelihood of deception and materiality"); *Marketquest Grp., Inc. v. BIC Corp.*, No. 11-cv-618-BAS (JLB), 2018 U.S. Dist. LEXIS 62361, at *14-15 (S.D. Cal. Apr. 12, 2018) (rejecting challenge that the expert "relies on only sixteen instances of actual confusion provided to him," concluding instead that it was "wholly appropriate for Dr. Burnett to use his knowledge and experience to analyze and interpret factual evidence to reach an opinion").

Finally, Dr. Novemsky appropriately drew from his extensive 20 years of experience in marketing and consumer behavior in analyzing the materials and making his determinations. *See Marketquest Grp.*, 2018 U.S. Dist. LEXIS 62361 at *14-15. Indeed, "interpreting and analyzing factual evidence is a primary role of expert witnesses." *Id.*

### B.  The Court Should Not Be Persuaded by Zesty Paws' Misleading Counterarguments

Zesty Paws raises two arguments challenging the factual basis for Dr. Novemsky's opinions—that Dr. Novemsky (1) failed to conduct a survey and (2) otherwise should have considered more materials—but in doing so Zesty Paws misstates the law and grossly mischaracterizes Dr. Novemsky's work in this case.

### 1.  Dr. Novemsky Is Not Required to Conduct a Survey to Render His Opinions

***First***, in criticizing Dr. Novemsky's failure to conduct a consumer survey, Zesty Paws gets the law wrong. It claims that Dr. Novemsky "failed to conduct a consumer survey with respect to *any* of his opinions in this case ***as is required*** in Lanham Act cases involving alleged false or misleading advertising." Mot. at 7 (emphasis added). But a court "need not refer to consumer

surveys when an advertising claim is alleged to be literally false on its face."[2] *Hertz Corp. v. Avis, Inc.*, 867 F. Supp. 208, 212 (S.D.N.Y. 1994). Even the cases cited in Zesty Paws' briefing show that Dr. Novemsky was not required to conduct a consumer survey. Mot. at 7 (citing *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 317 (2d Cir. 1982) ("When a merchandising statement or representation is literally or explicitly false, the court may grant relief without reference to the advertisement's impact on the buying public."). In any event, Zesty Paws ignores that a party need only submit "evidence such as an expert witnesses' testimony . . . to demonstrate the public's reaction to an ad" at the preliminary injunction stage. *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 906 F. Supp. 178, 181 (S.D.N.Y. 1995).

**Second**, Zesty Paws repeatedly faults Dr. Novemsky for failing to "conduct a consumer survey in this case to determine whether consumers in the pet supplement market identify 'Nutramax' as a brand"[3] or one "to assess any likelihood of confusion" stemming from the "Euromonitor Footnote." Mot. at 3, 5, 10. Courts have easily dispatched similar criticisms, reasoning that an expert (much like Dr. Novemsky here) need only explain how they applied their experience to the facts of the case. *See, e.g.*, *Lucky Brand Dungarees, Inc. v. Ally Apparel Res. LLC*, No. 05 Civ. 6757, 2009 U.S. Dist. LEXIS 35707, at *2 (S.D.N.Y. Apr. 6, 2009) (denying a motion

---

[2] Indeed, the cases cited in Zesty Paws' briefing are all inapposite because they discuss the use of surveys in the context of a ***misleading*** claim, which calls for "extrinsic evidence" of deception. *See* Mot. at 7-8 (citing *Johnson & Johnson v. Smithkline Beecham Corp.*, 960 F.2d 294, 299 (2d Cir. 1992); *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 317 (2d Cir. 1982); *Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*, 348 F. Supp. 2d 165, 184 (S.D.N.Y. 2004); *Upjohn Co. v. Am. Home Prods.*, 598 F. Supp. 550, 556 (S.D.N.Y. 1984). Here, however, Nutramax challenges the #1 Claims on ***literal falsity*** grounds, so no such showing is necessary. *Hertz Corp.*, 867 F. Supp. at 212.

[3] Any implication that Dr. Novemsky should have conducted a survey akin to the one conducted by Zesty Paws' survey expert, Sarah Butler, is absurd. Ms. Butler's survey amounts to little more than a biased reading comprehension test, and it is not designed to assess whether Nutramax is a brand. In contrast, Dr. Novemsky drew from respected marketing academic literature regarding the definition and features of a brand and used his 20 years' experience in marketing and consumer decision making to assess whether Nutramax satisfied that definition under the facts in this case. Although Zesty Paws clearly disagrees with Dr. Novemsky's conclusions, "disagreements are anticipated under FRE 702 and do not impact admissibility." *Allen v. Term Commodities, Inc. (In re Term Commodities Cotton Futures Litig.)*, No. 12-CV-5126 (ALC), 2020 U.S. Dist. LEXIS 181704, at *59-60 (S.D.N.Y. Sep. 30, 2020).

to exclude an expert opinion based on the expert's personal review of the merchandise and advertising and his extensive credentials "in marketing and branding"); *Price v. L'Oréal United States, Inc.*, No. 17 Civ. 614, 2020 U.S. Dist. LEXIS 153255, at *13 (S.D.N.Y. Aug. 24, 2020) (noting that "expert reports regarding consumer perception need not be based on scientific surveys, but that experts may testify based on their own experience"); *Hadley v. Kellogg Sales Co.*, No. 16 Civ. 04955, 2019 U.S. Dist. LEXIS 136791, at *24 (N.D. Cal. Aug. 13, 2019) (rejecting argument that expert failed to conduct a consumer survey because the expert's opinions were based on his experience and his review of the relevant materials).

In short, survey evidence is not "required" in this case, and Dr. Novemsky has an ample basis to render his opinions here.

### 2.   Dr. Novemsky Adequately Accounted for the Facts in Rendering His Opinions

Zesty Paws next grossly mischaracterizes Dr. Novemsky's report, accusing him of a "conceded and intentional failure to examine all of Nutramax Labs' labeling" and a "conscious disregard of the critical facts." Mot. at 9. Zesty Paws should have paid closer attention to Dr. Novemsky's report. Each of the items that Zesty Paws claims Dr. Novemsky "clearly" did not consider is covered in Zesty Paws' Complaint or among the materials that Dr. Novemsky reviewed. *Compare* Mot. at 9, with Dkt. 1 ¶¶ 28-29, 32-36. In fact, Dr. Novemsky considered and accounted for: (1) the product packaging and websites for COSEQUIN® and DASUQUIN®, among Nutramax's myriad other sub-brands; (2) the "#1 Veterinarian Recommended Brand" and "#1 Joint Health Brand Recommended by Veterinarians" claims for COSEQUIN® and DASUQUIN®, which are on their respective websites and packaging; and (3) Nutramax's website which claims that it is the "#1 Veterinarian Recommended Supplement Company." Considering these among other materials, Dr. Novemsky concluded that Nutramax is a Masterbrand and specific product names, such as COSEQUIN®, DASUQUIN®, and IMUQUIN®, are subbrands.

"The emphasis in [Rule 702(b)] on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Advisory Committee Notes to the 2000 Amendments, Fed. R. Evid. 702. At best, these attacks "simply represent[] a difference of opinion over what the facts show…and how the facts should be interpreted." *Pearlstein*, 2021 U.S. Dist. LEXIS 172218, at \*7-9 (S.D.N.Y. Sep. 10, 2021). They are "not a basis upon which the entirety of [an expert's] opinions must be excluded." *Id.* Therefore, the Court should conclude that Dr. Novemsky's opinions are based on "sufficient facts or data." Fed. R. Evid. 702(b).

### III.   Dr. Novemsky's Declaration and Report Convey a Reliable and Sound Professional Analysis

Rule 702 requires that expert testimony be "the product of reliable principles and methods" that are "reliably applied . . . to the facts of the case." Fed. R. Evid. 702(c), (d); *see also Daubert*, 509 U.S. at 589 & n.7. Relevant here, the Second Circuit has observed that the reliability of social science research, theories, and opinions "depends heavily on the knowledge and experience of the expert, rather than the methodology [or] theory behind it." *United States v. Joseph*, 542 F.3d 13, 21 (2d Cir. 2008). Indeed, "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999); *Pension Cmte. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 464-65 (S.D.N.Y. 2010) ("[T]he reliability of [an expert's] testimony largely depends on whether he has drawn the proffered industry standards from an adequate source—in this case, his experience."); Fed. R. Evid. Adv. Comm. Note Rule 702 ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."). Dr. Novemsky draws from an "adequate source"—his extensive expertise in marketing and consumer purchasing behaviors, well-documented and accepted marketing and consumer behavior processes, and

published articles in peer reviewed journals—all of which establish that his opinions are reliable.

## A. Dr. Novemsky Explains How He Applied His Expertise in Marketing and Consumer Decision Making to the Facts of This Case

Dr. Novemsky was tasked with applying his extensive knowledge and experience to the #1

Claims. (*Id.* Ex. C ¶ 2). In doing so, he developed and described the following opinions:

(1)    that "Nutramax is a brand in the Pet Supplements product category" (*id.* ¶ 22);

(2)    that "Zesty Paws' #1 Claims cause consumers to have more positive perceptions of Zesty Paws and more negative perceptions of Nutramax" (*id.* ¶ 31);

(3)    that "the disclaimers used by Zesty Paws to modify its #1 Claims are likely to be missed or misunderstood by a substantial number of consumers" (*id.* ¶ 42); and

(4)    that, "consumers who are exposed to the #1 Claims from Zesty Paws will be more likely to buy Zesty Paws products in the immediate future and less likely to buy Nutramax Products" and "consumers' attitudes and behaviors will be very unlikely to ever go back to what they were before seeing the #1 Claims, particularly if consumers see the #1 Claims repeatedly" (*id.* ¶¶ 57-58).

This Court should conclude, as courts have found in similar circumstances, that Dr.

Novemsky's opinions have a reliable basis and were reliably applied to the facts. For instance, in

*Pearlstein*, this Court rejected nearly as many *ipse dixit* attacks as Zesty Paws levels at Dr.

Novemsky. 2021 U.S. Dist. LEXIS 172218, at *19-23. The court first rejected the argument that an

accounting expert did "not employ a reliable methodology" and instead "uncritical[ly] accept[ed]"

the party's accounting determinations. *Id.* at *15-16. Like Zesty Paws' arguments here, "that

characterization is inaccurate." *Id.* at *16. The court noted that the field "involves the application

of considerable professional judgment," and the expert described his "expertise and opinions that

bear on his assessment" of the party's accounting decisions. *Id.*; *see also Marketquest Grp.*, 2018

U.S. Dist. LEXIS 62361, at *12-13 (S.D. Cal. Apr. 12, 2018) (rejecting argument that the expert's

analysis was "objectively and materially flawed," because given the expert's extensive experience

in marketing and surveys, his testimony was "both relevant and reliable in that the knowledge

14

underlying it has a valid connection to the pertinent inquiry and a reliable basis in the knowledge and experience of the relevant discipline"); *CDX Liquidating Tr. v. Venrock Assocs.*, 411 B.R. 571, 581 (N.D. Ill. 2009) (concluding an expert's methodology was sound where he "drew upon his considerable knowledge and experience analyzing the capital and equities markets; performed a complete analysis of economic factors influencing startup companies' abilities to raise capital during the relevant time period; and reviewed relevant research").

As in *Pearlstein*, for each of his opinions, Dr. Novemsky systematically walks through his analysis, explaining how his experience, relevant academic literature, and "well-studied processes associated with social influence and comparative advertising" (Novemsky Decl., Ex. C ¶ 31) led to the conclusion reached, why the sources he reviewed were "sufficient bas[es] for the opinion[s]," and how he "reliably applied" these sources to the facts. Fed. R. Evid. Adv. Comm. Note Rule 702. Dr. Novemsky details how he studied the pet supplements market, the parties' products, and the claims at issue to develop his own observations, through the lens of his decades of experience, about how such products are marketed and sold. For example, he identified that pet supplements are sold not just through pet stores and general retailers (including both physical and online storefronts), but also through veterinary offices. (Novemsky Decl., Ex. C ¶ 7). He also identified that pet supplement products can be recommended by veterinarians, or consumers may seek them out on their own. (*Id.* Ex. C ¶ 6). Dr. Novemsky further investigated the parties' respective product packaging, websites, and significant retail channels: Amazon, Chewy, Petco, Walmart, Target, PetSmart, and Costco. (*Id.* Ex. B p.7). And throughout Dr. Novemsky's report, he synthesizes his observations of the facts of this case, using his own extensive knowledge and support from academic literature. *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 179 (S.D.N.Y. 2009) ("[T]he more qualified the expert, the more likely that expert is using reliable methods in a reliable manner-highly qualified

and respected experts don't get to be so by using unreliable methods or conducting research in an unreliable manner.").

Thus, the Court should conclude that Dr. Novemsky's opinions have a reliable foundation that was reliably applied to the facts. *See* Fed. R. Civ. P. 702(c), (d); *Pearlstein,* 2021 U.S. Dist. LEXIS 172218, at *16; *Marketquest Grp.*, 2018 U.S. Dist. LEXIS 62361, at *12-13.

### B. Zesty Paws' Attacks on the Reliability of Dr. Novemsky's Specific Opinions Are Meritless

Using a scattershot approach, Zesty Paws denigrates Dr. Novemsky's opinions as "uninformed and speculative," *ipse dixit*, and "unsupported by any recognized methodology." Mot. at 3, 8, 10, 13. But a review of Dr. Novemsky's opinions easily dispels this fiction.

#### 1. Nutramax Is a Brand in the Pet Supplements Category

For starters, Zesty Paws' hyperbole that Dr. Novemsky's opinion "constitutes the essence of unverifiable subjectivity" is a nonstarter. Mot. at 8. Dr. Novemsky not only thoroughly explains how he reached the conclusion that "Nutramax" is a brand, but also illuminates how Zesty Paws' unsupported definition of a brand misses the mark. He further details how he observed the use of NUTRAMAX throughout the marketplace, including in online retailer product titles, search results, "brand" drop down menus, customer reviews, and the packaging for Nutramax's products. (*Id.* Ex. C ¶ 12-15). With citations to four different academic sources, Dr. Novemsky details the features that are indicative of a brand and how Nutramax's products bear both the NUTRAMAX Masterbrand and individual subbrands, a "very common practice across industries." (*Id.* Ex. C. ¶¶ 11, 16-20). Finally, he draws from his own marketing expertise to explain how Zesty Paws' position—that NUTRAMAX is not a brand—reflects a "significant misunderstanding of how

brands function."[4] (*Id.* Ex. C ¶ 21); *see, e.g.*, *Bailey*, 338 F.R.D. at 401 (concluding that the expert's "extensive industry experience," combined with his investigation visiting several Rite Aid stores to examine the placement of OTC products "allows him to reliably and persuasively opine as to the issues of likelihood of deception and materiality").

Finally, Dr. Novemsky's opinions and work in this case differ sharply from the cases cited in Zesty Paws' briefing. *See* Mot. at 8-9. Unlike the excluded expert in *Nimely v. City of New York*, Dr. Novemsky does not act on "instinct" or make a pre-ordained determination that Nutramax's position in this case "had to be true." 414 F.3d 381, 399 (2d Cir. 2005); *compare with* Novemsky Decl, Ex. C ¶ 2 ("I was asked by counsel for Nutramax to independently review and develop opinions about" the #1 Claims). Unlike the excluded expert in *Cross Commerce Media v. Collective, Inc.*, Dr. Novemsky does not relies on far more than a single source to render his opinions. No. 13-cv-2754 (KBF), 2014 U.S. Dist. LEXIS 117244, at *21-23 (S.D.N.Y. Aug. 21, 2014); *see also Maloney v. Singas*, 351 F. Supp. 3d 222, 229 n.12 (E.D.N.Y. 2018) (rejecting an estimate based on a website reporting the number of dojos in the country). Dr. Novemsky's opinions also sharply contrast with those in *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.* in which the expert provided ***no*** explanation "*how* the content of a particular comment or retweet" factored into his analysis. 209 F. Supp. 3d 612, 647 (S.D.N.Y. 2016) (emphasis in original). Finally, unlike the expert in *Mason v. AmTrust Fin. Servs., Inc.*, Dr. Novemsky's opinions do not stray from his expertise or make unexplained, "radical" departures in reasoning.[5] No. 19 Civ. 8364 (DLC), 2020

---

[4] By criticizing Dr. Novemsky's citation to a "web-based dictionary definition" of "brand," Zesty Paws demonstrates how significant their misunderstanding is. Mot. at 3, 8. Far from grasping for a definition, Dr. Novemsky cogently explains that the definition of "brand" comes from the American Marketing Association, a preeminent organization focused on marketing education and promotion of marketing solutions. Novemsky Dec. Ex. C ¶4. The AMA definition is widely accepted, even in foundational marketing course materials. *See, e.g.*, Kevin L. Keller, Strategic Brand Management: Building, Measuring, and Managing Brand Equity 3 (Pearson, 2nd ed. 2003). Although it may take issue with the AMA definition, Zesty Paws offers no countervailing authority. Mot. at 9.

[5] Zesty Paws returns to the *ipse dixit* theme later in its brief, but again refers to cases involving an utter lack of expert analysis—a far cry from Dr. Novemsky's detailed analysis here. *See* Mot. at 10 (citing *Piepes v. NAI Entm't Holdings*

U.S. Dist. LEXIS 238359, at *11-13 (S.D.N.Y. Dec. 18, 2020). Dr. Novemsky's testimony that NUTRAMAX is a brand is well reasoned, clearly outlined, and directly related to his expertise in marketing and consumer behavior.

> 2. The #1 Claims Impact Consumer Behavior and Purchasing Decisions and Will Cause Irreparable Harm

Zesty Paws claims, incorrectly, that Dr. Novemsky's report "makes no effort to tie his experience as a professor, a litigation consultant, and working for various companies" to his testimony, and that his opinions regarding consumer behavior and decision-making are "uninformed and speculative" *ipse dixit*. Mot. at 10, 14. That is not a faithful assessment of Dr. Novemsky's report.

Dr. Novemsky does not simply declare that the #1 Claims impact consumer perception and behavior, but rather he walks through his analysis with citations to twelve academic publications, including publications concerning how market leadership claims impact consumers. (*Id.* Ex. C ¶ 25 nn.10 & 12; ¶¶ 23-31). He combines these articles with his own experience working with companies in varying consumer-facing industries over the years to conclude that Zesty Paws' best selling claims will cause consumers to have more positive perceptions of Zesty Paws and more negative perceptions of Nutramax. (*Id.* Ex. C ¶¶ 23-26). Finally, Dr. Novemsky draws from nearly twenty academic publications in explaining both the near-term and long-term harm that the #1 Claims will cause. Again, Dr. Novemsky carefully details the behavioral processes at play (such as "normative influence," "habit," "status quo bias," "self-perception theory," and "brand loyalty") to explain how #1 Claims serve as a "shortcut" for consumer purchasing decisions and how those

---

*LLC*, 394 F. Supp. 3d 315, 317-18 (E.D.N.Y. 2019) (excluding medical causation expert who provided no explanation why or how he reached his causation opinion); *Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-cv-8645 (KBF), 2018 U.S. Dist. LEXIS 24375, at *14 (S.D.N.Y. Feb. 14, 2018) (excluding food packaging and additive expert because she was not qualified to opine on "product commercialization" and then offered no explanation for how she created purported commercialization timelines). They do not, and cannot, alter the conclusion that Dr. Novemsky's opinions are reliable.

processes will cause consumers to "switch" brands in a way that is "very difficult to reverse."[6] (*Id.* Ex. C ¶ 44-45, 48-50); *see Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 331-32 (S.D.N.Y. 2022) ("Because an expert opinion is admissible if it 'rests on well-established industry standards,' and because Kanyuk applied such industry-standard valuation methodologies, his proposed testimony satisfies *Daubert* and is admissible.").

---

[6] Richard H. Thaler & Cass R. Sunstein, *Nudge: Improving Decisions About Health, Wealth, and Happiness* 69, 184 (Penguin Books, 2009) ("[R]ecall too that people like to do what most people actually do"); Dana-Nicoleta Lascu & George Zinkhan, *Consumer Conformity: Review and Applications for Marketing Theory and Practice*, 7 J. MKTG. THEORY AND PRAC. 1, 1-12 (1999) ("[C]onformity could result from informational influence – leading to the acceptance of information received from others as evidence of reality – and normative influence – leading individuals to conform to the expectations of another person or a group."); Linda L. Hellofs & Robert Jacobson, *Market Share and Customers' Perceptions of Quality: When Can Firms Grow Their Way to Higher Versus Lower Quality?*, 63 J. MKTG. 16, 16-25 (1999) ("In addition to altering the objective quality of the brand, widespread use or popularity can also affect perceived quality by acting as a cue or signal to consumers…That is, consumers are using high (low) market share as a signal of superior (inferior) quality."); Wendy Wood & David T. Neal, *The Habitual Consumer*, 19 J. CONS. PSYCH. 579, 579-580 (2009) ("Purchase and consumption are similarly repetitious. Consumers tend to buy the same brands of products across different shopping episodes purchase the same amounts at a given retail store across repeat visits…" (internal citation omitted)); William Samuelson & Richard Zeckhauser, *Status Quo Bias in Decision Making*, 1 J. RISK AND UNCERT. 7, 7-8 (1988) ("The main finding is that decision makers exhibit a significant status quo *bias*. Subjects in our experiments adhered to status quo choices more frequently than would be predicted by the canonical model."); Daniel Kahneman et al., *Anomalies: The Endowment Effect, Loss Aversion, and Status Quo Bias*, 5 *J. Econ. Persp.* 193, 199 (1991) ("The status quo bias is a natural consequence of this asymmetry: the disadvantages of a change loom larger than its advantages.") Ilana Ritov & Jonathan Baron, *Status-Quo and Omission Biases*, 5 J. RISK AND UNCERT. 49, 49 (1992) ("Bias towards the status quo found in choice and in emotional reactions to adverse outcomes, has been confounded with bias toward omission."); Daryl J. Bem, *Self-perception Theory*, 6 ADVANS. EXPER. SOC. PSYCH. 1, 2-8 (1972) ("Individuals come to 'know' their own attitudes, emotions, and other internal states partially by inferring them from observations of their own overt behavior and/ or the circumstances in which this behavior occurs."); Abdelmajid Amine, *Consumers' True Brand Loyalty: The Central Role of Commitment*, 6 J. STRAT. MKTG. 305, 312-315 (1998) ("It is now generally accepted that consistent purchasing behaviour could have two main explanations. It may be due to the consumers' tendency to reduce or avoid search efforts because the product is perceived as low involving. Then there is a high probability of interrupting this consistent buying and switching to another brand at the first opportunity or inducement to do so (price increasing, new brand launching or brand out of stock). These situations describe a spurious customer loyalty to the brand. A consistent behaviour may also result from a commitment to the brand enabling the customer to resist changing the brand."); Lakshman Krishnamurthi & S.P. Raj, *An Empirical Analysis of the Relationship Between Brand Loyalty and Consumer Price Elasticity*, 10 MKTG. SCI. 172, 181-182 (1991) ("Conventional wisdom suggests that consumers who are loyal to a brand will be insensitive to the brand's price."); Aumyo Hassan & Sarah J. Barber, *The Effects of Repetition Frequency on the Illusory Truth Effect*, 6 COGN. RSCH.: PRINC. & IMPLIC. 1, 1 (2021) (Repetition can affect beliefs about truth. People tend to perceive claims as truer if they have been exposed to them before. This is known as the illusory truth effect, and it helps explain why advertisements and propaganda work, and also why people believe fake news to be true."); Christian Unkelbach et al., *Truth by Repetition: Explanations and Implications*, 28 CURR. DIRECTIONS PSYCH. SCI. 247, 252 (2019); *see also* Matthew L. Stanley et al., *The Cognitive Processes Underlying False Beliefs*, 32 J. CONS. PSYCH. 359, 363-366 (2022); Gita Venkataramani Johar, *Untangling the Web of Misinformation and False Beliefs*, 32 J. CONS. PSYCH. 374, 374-383 (2022) ("It is harder to correct false beliefs than it is to prevent them in the first place" and "[e]ven if they are processed, a process of motivated skepticism may result in corrective claims being counterargued or derided").

### 3.   The Disclaimers to the #1 Claims Are Ineffective

Finally, Dr. Novemsky does not simply offer his "personal opinion" that the disclaimers to the #1 Claims are misleading. Mot. at 10. Instead, drawing from academic literature and his expertise in consumer perception and behavior, Dr. Novemsky details three consumer behavior criteria that must be satisfied for information to be processed effectively: (1) exposure; (2) attention; and (3) interpretation. (Novemsky Decl., Ex. C ¶ 33). Applying this rubric, Dr. Novemsky explains how the disclaimers will lead consumers to have both quantitative and qualitative misunderstandings about the #1 Claims. (*Id.* Ex. C ¶¶ 38-41). He also draws on his own expertise to identify language that, from a marketing and consumer behavior perspective, does not satisfy the "interpretation" criterion. (*Id.* Ex. C ¶¶ 38-40).

Dr. Novemsky's analysis and opinion are much like the expert opinion in *Westchester Media Co. L.P. v. PRL United States Holdings*, in which the court permitted an expert to testify about the effectiveness of a disclaimer. No. H-97-3278, 2001 U.S. Dist. LEXIS 17468, at *45-46 (S.D. Tex. Oct. 23, 2001). Noting the expert's "knowledge, skill, experience, training and education in the field of advertising and communications," the court concluded that his testimony was both reliable and persuasive. *Id.*; *see also DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 2019 U.S. Dist. LEXIS 63202, at *7 (E.D.N.Y. Feb. 21, 2019) (holding that antitrust expert could "point to factors that would tend to show anticompetitive conduct in a market" and "indicate whether he believed those factors existed" in the case); *SourceOne Dental, Inc. v. Patterson Cos.*, No. 15-cv-5440 (BMC), 2018 U.S. Dist. LEXIS 79291, at *4 (E.D.N.Y. May 10, 2018) (similar, and adding that an expert "could also hypothesize that if certain conduct did occur, economists would expect the market to react in a particular way").[7]

---

[7] Zesty Paws refers to another case involving a misleading (not literally false) claim, which stands for the unremarkable proposition that "[c]ommon sense and personal experience alone are not enough" to demonstrate a claim is misleading.

In sum, the Court should conclude that Dr. Novemsky's opinions concerning the ineffectiveness of the disclaimers are "the product of reliable principles and methods" that were "reliabl[y] appli[ed]" to the case. Fed. R. Evid. 702(c), (d).

## IV.    Dr. Novemsky's Opinions Will Assist the Trier of Fact

An expert's opinions on a particular issue must "assist the trier of fact." *Marini v. Adamo*, 995 F. Supp. 2d 155, 179 (E.D.N.Y. 2014). On one hand, an expert's testimony must be "relevant, that is, whether it ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04 Civ. 7369 (LTS) (HBP), 2006 U.S. Dist. LEXIS 51869, at *16 (S.D.N.Y. July 27, 2006). On the other, the Second Circuit has cautioned against testimony that usurps the role of the trial judge or the jury, which "by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Marini*, 995 F. Supp. at 180. Here, however, these concerns are diminished as Dr. Novemsky's testimony will not be presented to a jury. *See Tomra of N. Am., Inc.,* 2023 U.S. Dist. LEXIS 164915, at *3.

Here, Dr. Novemsky's opinions are plainly relevant to the dispute, which concerns whether NUTRAMAX is a brand and, therefore, whether Zesty Paws' #1 Claims are literally false.

***First***, Dr. Novemsky's opinions about whether NUTRAMAX is a brand and the impact of the #1 Claims on consumer perceptions, preferences, and behaviors are plainly relevant to this

---

Mot. at 10 (citing *First Health Grp. Corp. v. United Payors & United Providers, Inc.*, 95 F. Supp. 2d 845, 849 (N.D. Ill. 2009)). *First Health Group* is also distinguishable both in terms of the expert opinion and the posture of the case. There, the experts provided their personal, anecdotal impressions of the challenged claim, unlike Dr. Novemsky's assessment of the behavioral criteria necessary for a consumer to receive, process, and understand information. In any event, *First Health Group* was decided at summary judgment, not at the preliminary injunction posture. *See SmithKline Beecham Consumer Healthcare*, 906 F. Supp. at 181 ("[E]vidence such as an expert witnesses' testimony may be used to demonstrate the public's reaction to an ad."). *First Health Group*, therefore, has no bearing on Dr. Novemsky's opinions here.

dispute involving claims of false advertising hinging in part on whether NUTRAMAX is a brand. *See, e.g.*, *Roman v. Sprint Nextel Corp.*, No. 12-CV-276 (VEC), 2014 U.S. Dist. LEXIS 159707, at *23-24 (S.D.N.Y. Nov. 13, 2014) (concluding that an expert "will assist the trier of fact to understand user behavior and perception of warnings beyond the everyday experience of a layperson to determine whether a warning would have been futile."); *Marketing/Trademark Consultants, Inc. v. Caterpillar, Inc.*, No. 98 Civ. 2570, 2000 U.S. Dist. LEXIS 7952, at *2 (S.D.N.Y. June 9, 2000) (expert testimony on custom and practice "is received to assist the trier of fact in evaluating the effect or propriety of . . . [the] conduct"); *Bailey*, 338 F.R.D. at 401 (concluding the expert's "experience allows him to reliably and persuasively opine" on whether the placement of gelcaps impacted "consumers' reaction to the rapid release statement at issue").

Zesty Paws claims that Dr. Novemsky's opinions do not address artificially narrow and discrete topics (like "how consumers determine 'brand' from product packaging," how "consumers distinguish 'brand' from 'manufacturer' based on product packaging," or the "design and use of consumer surveys to determine brand recognition with respect to particular products.") Mot. at 2-3. Although none of these "issues" actually pertain to this dispute, even if they did "Rule 702 does not require such specificity[.]" *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 143 (S.D.N.Y. 2003); *see also McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) ("[Defendant]'s suggestion that [the expert witness] had to be a specialist in environmental medicine to provide expert testimony in this case is an unwarranted expansion of the gatekeeper role announced in *Daubert*."). Zesty Paws' mischaracterization of the issues should not result in excluding Dr. Novemsky's opinions.

Zesty Paws also argues that Dr. Novemsky's opinion regarding the ineffectiveness of Zesty Paws' disclaimers is irrelevant. But testimony is relevant if it "has any tendency to make a fact

more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also* Fed. R. 702(a) (stating an expert may testify if his knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue"). Both Nutramax and Zesty Paws have put the disclaimer at issue. *See, e.g.*, Compl., Dkt. 1 ¶ 23 ("The Euromonitor Footnote is clear and unambiguous."); Ans. & CCs, Dkt. 8 ¶¶ 59-70 (challenging the efficacy of the disclaimer); Opp'n to Mot. Prel. Inj., Dkt. 28 at 14-15 (arguing the "literal truth" of the #1 Claims in light of the disclaimer).

  ***Second***, Dr. Novemsky's opinions neither constitute legal conclusions nor usurp the role of the jury in this matter. Indeed, in *Marketquest*, the court rejected arguments similar to those Zesty Paws raises here, and permitted an expert with forty years' experience in consumer behavior, brand, and advertising to testify on various matters in a trademark dispute, including that "the use of the marks may lead to initial interest confusion among the target audiences, largely because the campaign is directed at the same potential and current customers for these products, as verified by the media mix employed." 2018 U.S. Dist. LEXIS 62361, at *6. The court concluded that this testimony was not comprised of legal conclusions directed to the "ultimate question" of whether there was a likelihood of confusion, but instead would "help lay jurors to understand the unique facts and industry setting of this case." *Id.* at *11. Similarly, the court in *CDX Liquidating* found that an expert may "offer his analysis of the practices and standards of corporate governance and Defendants' conduct in light of those practices and standards." 411 B.R. at 588; *see also DPWN Holdings Inc.*, 2019 U.S. Dist. LEXIS 63202, at *19-20 (observing that an expert can "point to factors that would tend to show anticompetitive conduct in a market," "indicate whether he believed those factors existed here, and what the economic significance of those factors would be," "explain how certain conduct could affect a market through the use of hypothetical statements," and "hypothesize that if certain conduct did occur, economists would expect the market to react in

a particular way."). Additionally, courts reject challenges to opinions similar to Dr. Novemsky's here because they do not usurp the jury's role or offer legal conclusions, but rather are "grounded in marketing and consumer decision-making in general and branding in particular." *In re Payment Card Interchange Fee*, 638 F. Supp. 3d at 281 (allowing opinion that consumers are "unlikely to associate these practices with [the defendant's] brand promises"); *accord Marketquest*, 2018 U.S. Dist. LEXIS 62361, at *6.

Zesty Paws accuses Dr. Novemsky of opining on the motivations of the parties and third parties, but Dr. Novemsky in no way does so (or even purports to do so). Instead, his opinions are focused on the "processes associated with social influence and comparative advertising." (Dkt. 14-4, Ex. C ¶ 55); *see In re Payment Card Interchange Fee*, 638 F. Supp. 3d at 281. Moreover, Dr. Novemsky does not purport to opine on the ultimate legal issue in this case—whether the #1 Claims are false. Rather, like the expert in *CDX Liquidating*, Dr. Novemsky offers his analysis to assess the facts at issue (consumer behavior and assessment of whether Nutramax is a brand) to assist the trier of fact in understanding the evidence. 411 B.R. at 588.

Thus, the Court should conclude that Dr. Novemsky's opinions will assist the trier of fact.[8]

## CONCLUSION

Dr. Novemsky is eminently qualified, and he performed a thorough, reliable analysis in rendering his opinions in this case. Zesty Paws has provided no viable ground for his exclusion. For these and the foregoing reasons, Nutramax respectfully requests that the Court deny Zesty Paws' Motion in full.

---

[8] Finally, Zesty Paws accuses Dr. Novemsky of contravening "established law" by opining that the disclaimer is "ineffective" and "confusing." Mot. at 12. Not so. By explaining the criteria by which he evaluated the disclaimer, Dr. Novemsky did not speak to the ultimate question in the case but rather bases his opinion on his expertise in marketing and consumer decision making and behavior. *In re Payment Card Interchange Fee*, 638 F. Supp. 3d at 311 (observing that the expert's opinion that "discounting may have been an ineffective means of influencing customer behavior" was "acceptable expert testimony").

Respectfully submitted, this 18th day of January, 2024.

/s/ *Uly S. Gunn*

Jason D. Rosenberg (PHV pending)
Uly S. Gunn (admitted PHV)
Alan F. Pryor (admitted PHV)
Mary Grace Gallagher (admitted PHV)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
*jason.rosenberg@alston.com*
*sam.gunn@alston.com*
*alan.pryor@alston.com*
*marygrace.gallagher@alston.com*

Natalie Clayton
Elizabeth Buckel
**ALSTON & BIRD LLP**
90 Park Avenue
15th Floor
New York, NY 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
*natalie.clayton@alston.com*
*elizabeth.buckel@alston.com*

*Attorneys for Defendants/Counterclaim-Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

*/s/ Uly S. Gunn*
_____
Uly S. Gunn
